TEICH, GROH
691 State Highway 33
Trenton, New Jersey 08619
Phone: (609) 890-1500
Attorneys for Debtor(s)
BARRY W. FROST, ESQUIRE

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In the Matter of:

ADVENT PHARMACEUTICALS, INC.,

Debtor(s).

Chapter 11

Case No. 11-25437-KCF

CERTIFICATION IN SUPPORT OF MOTION TO SELL ASSETS

Bharat Patel, of full age, hereby certifies as follows:

1. I am the President of the Debtor Corporation and am familiar with the facts set forth in this Certification.

2. For a period in excess of 2 years, I have been attempting to locate purchasers of the assets used in the business of Advent Pharmaceuticals and which are located at 55 Lake Drive, East Windsor, New Jersey.

3. All of those assets, which consist primarily of the land, building and machinery, are subject to the first security interest in favor of UPS.

4. While I believe that the assets of Advent have a value in excess of about $4 million, I was unable and had been unable for the past more than 2 years to locate a purchaser who was willing to offer that amount of money.

5. I know that UPS had a auction sale scheduled of all of the equipment Advent located at 55 Lake Drive, East Windsor, New Jersey, and I believe have had that equipment appraised although I do not have a copy of that appraisal.

6. The building at 55 Lake Drive, East Windsor, New Jersey is 28,000 square feet and the land encompasses 2.5 acres.

7. There have been no operations for Advent Pharmaceuticals for the past 2 years and neither the equipment nor the land and building have been used in the business of Advent for

1

that period of time.

8. In connection with my efforts to sell the assets of Advent Pharmaceuticals, I was able to obtain an offer from Winmedix, Inc. and a copy of the Agreement of Sale is attached as "Exhibit A".

9. The $50,000.00 deposit required in §6.2 has in fact been deposited with bankruptcy counsel for Advent Pharmaceuticals in its trust account.

10. The Agreement of Sale provides for the sale of the land, building and equipment located at 55 Lake Drive for the sum of $2,200,000.00.

11. I believe that an auction sale of the land, building and the equipment would produce significantly less than the $2,200,000.00 and that this maximizes the value of the sale of those assets.

12. The only relationship that I had with Winmedix, Inc. prior to the entry into this Contract of Sale, was I received a personal loan from the principal of Winmedix, Dr. Ravinder R. Annamaneni for $20,000.00, which was used as a retainer for the filing of the Chapter 11 for Advent Pharmaceuticals and Theragen.

13. Other than the borrowing of funds, there was no prior business relationship between myself and the owner of Winmedix and the entire transaction is, as set forth in the Agreement of Sale, there being no undisclosed terms. Further, it is not anticipated that I will be hired by or employed by Windmedix to perform any services.

14. I have had no discussions with regard to providing consulting services to Winmedix and do not anticipate that that will ever be offered to me.

15. I believe that Winmedix is an independent third party purchaser in good faith that is offering $2,200,000.00 to purchase these assets and request that the Court approve the sale of the assets free and clear of all outstanding claims, liens and encumbrances, with any valid claim, lien and/or encumbrance to attach to the proceeds of sale.

16. The only other asset of Advent Pharmaceuticals is intellectual property and FDA approved formulas and those assets are not included in the sale and are to be retained by the

Debtor.

I hereby certify that the foregoing statements made by me are true and to the best of my knowledge. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: 7/5/2011

_____
Bharat Patel

PURCHASE AND SALE AGREEMENT

AGREEMENT entered into as of the June ___, 2011 by and between:

**ADVENT PHARMACEUTICALS, INC.,**
(f/k/a Neil Laboratories, Inc) A New Jersey Corporation
located at 55 Lake Drive, East Windsor, New Jersey
**(HEREINAFTER REFERRED TO AS "SELLER")**

AND

**WINMEDIX, INC.,**
Located at 14 Apple Ridge Way
East Brunswick, New Jersey 08816
**(HEREINAFTER REFERRED TO AS "Purchaser")**

FOR AND IN CONSIDERATION of the terms, covenants and considerations herein set forth, the parties hereto agree as follows:

WITNESSETH

WHEREAS, Advent Pharmaceuticals, Inc., is the owner of certain land and building improvements designated as Lot 192, Block 20.01 on the Tax Map of the Township of East Windsor, said real property being more commonly known as 55 Lake Drive, East Windsor, New Jersey, which property, as hereinafter defined, shall be designated as "Real Property" and,

WHEREAS, Advent Pharmaceuticals, Inc., operates a business that develops and sells proprietary pharmaceutical prescription products and other pharmaceuticals at the Real Property; the furniture, fixtures, and laboratory equipment of which, as hereinafter defined shall be designated as the "Chattel"; and

WHEREAS, the Purchaser desires to purchase and Seller is willing to sell, the Real Property and the Chattel as are set forth herein, all in accordance with the terms and conditions of this Agreement,

NOW THEREFORE, in consideration of this mutual agreement, the undersigned agree as follows:

1



ARTICLE 1

RECITALS

All recitals set forth herein are incorporated herein by reference, as if fully restated.

ARTICLE 2

DEFINITION OF REAL PROPERTY

A. The Real Property which are the subject of this sale and which are to be conveyed pursuant to this contract consisting of all that certain lot, tract, or parcel of land, together with the buildings and improvements thereon and the privileges and appurtenances thereto, situate, lying and being in the Township of East Windsor, County of Mercer and State of New Jersey, said property being known as Lot 192, Block 20.01 on the Tax Map of the Township of East Windsor.

B. A metes and bounds description and survey of the Real Property are to be provided by the Purchaser prior to the closing of title and which shall determine the exact description of the property.

ARTICLE 3

AGREEMENT TO SELL AND PURCHASE REAL PROPERTY

A. The Seller shall sell and the Purchaser shall purchase, the Real Property, free and clear of all liens, encumbrances and restrictions, as permitted by US Bankruptcy Court except as set forth herein.

B. The Seller shall deliver and the Purchaser shall accept at closing, a Bargain and Sale Deed with Covenants against Grantor's Act, together with an Affidavit of Title in the usual form.

C. Title to the Real Property shall be insurable at regular rates by a title company licensed to do business in the State of New Jersey except that the Purchaser specifically agrees to accept title subject to any covenants or easements of record.

D. Seller shall obtain and have presented at the closing a discharge or original mortgage endorsed for cancellation of any mortgage(s) recorded against the Real Property.

E. Seller herein agrees to sell and Purchaser agrees to purchase all of title and interest in and to the Real Property more fully described in Schedule A.

ARTICLE 4

DEFINITION OF BUSINESS

A. The Chattel, which is the subject of this transaction shall consist of some of the assets of Advent Pharmaceuticals Inc., which includes the supplies and trade fixtures, furnishings, equipment, and goodwill (the trade name/mark);

C. Attached hereto is a list of all equipment and machinery to be sold and transferred herein which list shall be incorporated as "Schedule B".

ARTICLE 5

AGREEMENT TO SELL AND PURCHASE CHATTEL

A. Seller herein agrees to sell and Purchaser agrees to purchase all of the right title and interest in and to the Chattel.

B. The sale of the Chattel shall be free and clear of all liens, encumbrances or claims against the said assets, except as specifically may be set forth herein.

C. The Sellers shall deliver and the Purchaser shall accept at closing a Bill of Sale to evidence the sale and transfer contemplated by this Agreement for all items at Schedule B attached hereto with Bankruptcy Court approval.

D. In the event that a Bulk Sales release or payoff letter is not available from the State of New Jersey, Division of Taxation on or before the date of closing, as hereinafter defined, the Purchaser shall proceed to closing upon the posting of a reasonable escrow by the Sellers from the closing proceeds. Purchaser's counsel will serve as the escrow agent in such event. See Article 13 herein for details.

ARTICLE 6

PAYMENT PURCHASE PRICE

6.1    The Purchase Price for both the Real Property and the Chattel is TWO MILLION TWO-HUNDRED THOUSAND US ($2,200,000.00) DOLLARS.

6.2    The Purchase Price shall be paid in the following manner:

1

| | |
|---|---:|
| Escrow with Attorney | $ 50,000 |
| At closing of title | $2,150,000 |

3

| | |
|---|---|
| **TOTAL PURCHASE PRICE:** | $ 2,200,000.00 |

## ARTICLE 7

CONDITIONS PRECEDENT TO CLOSING

7.1    Purchaser may secure an accurate survey of this Property showing actual dimensions of the Property and all easements and rights-of-way affecting the Property and an accurate metes and bounds description of the Property, same to be prepared by surveyed by a licensed surveyor who shall have been retained by Purchaser. Said description, as certified, and if secured shall be contained in the Deed of Conveyance.

7.2    It is understood and agreed that the obligations of Purchaser to pay the Purchase Price and to accept a tender of the Deed to any portion of the Property is contingent upon achievement by Purchaser of each and every condition contained in the subparagraphs hereof. The conditions stated herein are included in this Agreement for the protection of Purchaser and Purchaser shall have the right to waive any and all of same in whole or in part. If such conditions cannot be satisfied, after a diligent and good faiths efforts to do so prior to the date of expiration of this Agreement, Purchaser shall have the right to terminate this Agreement, whereupon, this Agreement shall be null and void, Purchaser will be entitled to a return of all monies paid under this Agreement and thereafter neither party shall have any further rights or obligations hereunder.

7.3    Representations and Warranties. All representations and warranties made by Seller pursuant to Article Five below shall be made true and correct.

7.4    Subject to the provisions set forth in Article Three herein, the Purchaser is purchasing the Real Property in an "as is" and "where is" condition subject to normal wear and tear. Purchaser acknowledges that it will have had an opportunity to inspect the Real Property and will conduct its own inspections and investigations thereof and will not rely on any representations or warranties relating thereto on behalf of the Seller as to the physical condition, value, suitability or fitness of the property for any particular purpose except such statements of the Seller expressly set forth in this Agreement. In the event that in between now and closing, either the Seller or a third party causes the site to become contaminated with such contamination resulting in am obligation of a cleanup pursuant to DEPE regulations, Purchaser herein shall have the right to declare this contract null and void and all deposit monies plus interest paid hereunder shall be immediately returned to the Purchaser.

7.5    Contingency:
        A) This contract is contingent upon obtaining the requisite Order from the Bankruptcy Court approving the sale.

4

7.6   Purchaser will, at Purchaser's expense, obtain a current title commitment for an ALTA Form B Owner's Policy of Title Insurance issued by the Title Company setting forth (i) the state of the title of the Property and all liens, encumbrances, matters of record and all facts and conditions, including easements, restrictions, rights of way, covenants, and reservations, if any affecting the Property ("Title Exceptions"), together with legible copies of the recorded instruments relating to such Title Exceptions, and (ii) the requirements of the Title Company to insure title to the Property. Seller shall cure or remove, and shall notify Purchaser in writing of same, provided that nay lien that can be satisfied by the payment of money may be paid and satisfied at Closing. Seller agrees to use its best efforts to perfect such title, to cure or remove all Title Objections and to satisfy the requirements made by the Title Company, if any. If Seller is unable to cure or remove the Title Objections to the satisfaction of Purchaser and to satisfy the requirements of the Title Company, Purchaser, at its option, may either terminate this Contract, whereupon the Deposit Monies shall be promptly refunded to Purchaser and both parties shall be released from this Contract, or Purchaser may waive such Title Objections and close the purchase and sale transaction contemplated by this Contract in accordance with the remaining terms and provisions hereof.

ARTICLE 8

REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants to Purchaser as follows:

8.1   Organization of Seller.  (a) Seller is a corporation organized and validly existing and in good standing under the laws of the State of New Jersey and Seller has the full power and authority to the execution and delivery of this Agreement and the performance by Seller of its obligations hereunder have been duly authorized by all necessary corporate action.

8.2   Execution of Documents.  Neither the execution and delivery of this Agreement nor the performance by Seller of any of its obligations hereunder, nor the consummation of any of the transactions contemplated hereby will (a) violate or conflict with any agreement to which Seller is a party or by which Seller or any of its assets may be bound; or (b) violate or conflict with any provision of the Seller's Certificate of Incorporation, By-Laws, or other organizational documents.

8.3   Limitation of Warranties.   EXCEPT AS SET FORTH ABOVE, SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE PURCHASED REAL PROPERTY AND CHATTEL AND ALL SUCH PURCHASED REAL PROPERTY AND CHATTEL ARE PURCHASED "AS IS". ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY DISCLAIMED BY SELLER.

ARTICLE 9

5

REPRESENTATIONS AND WARRANTIES OF PURCHASER

The Purchaser represents and warrants to Seller as follows:

9.1    Corporate Organization of the Purchaser. Purchaser is a corporation organized, validly existing and in good standing under the laws of the State of New Jersey. The execution and delivery of this Agreement and the performance by Purchaser of its obligations hereunder have been duly authorized by all necessary corporate action on the part of Purchaser. This Agreement is a valid and binding obligation of Purchaser enforceable against Purchaser in accordance with its terms, except as enforceability of this Agreement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally.

9.2    Execution of Documents. Neither the execution and delivery of this Agreement nor the performance by Purchaser of any of its obligations hereunder, nor the consummation of any of the transactions contemplated hereby will (a) violate or conflict with any agreement to which Purchaser is a party or by which Purchaser or any of its property may be bound; or (b) violate or conflict with any provision of Purchaser's Certificate of Incorporation or By-laws or other organizational documents.

ARTICLE 10

INDEMNITY

10.1    Indemnification by Seller. Seller shall indemnify and hold Purchaser, its affiliates, directors, officers, employees, agents, attorneys and the successors and/or assigns of any of the foregoing (the "Purchaser Indemnities") from and against any and all liabilities, damages, losses, costs or expenses (including attorneys' fees, professional fees and other expenses of litigation and/or arbitration) any breach by Seller of its covenants provided in Sections.

10.2    Indemnification by Purchaser. Purchaser shall indemnify and hold Seller, its subsidiaries, directors, officers, employees, agents, attorneys and the successors and/or assigns of any of the foregoing (the "Seller Indemnities") harmless from and against any and all liabilities, damages, losses, costs and expenses (including reasonable attorney and professional fees and other expenses of litigation and/or arbitration) resulting from any breach by Purchaser of its covenants provided in this agreement.

10.3    Indemnification Notice. A party (the "Indemnitee") that intends to claim indemnification under this Section shall promptly notify the other party (the "Indemnitor") in writing of any loss, claim, damage, liability or action in respect of which the Indemnitee or any of its subsidiaries, directors, officers, employees or agents intend to claim such indemnification, and the Indemnitor shall have the right to participate in and, to the extent the Indemnitor so desires, to assume the defense thereof with counsel mutually satisfactory to the parties. The indemnity provided herein shall not apply to

6

amounts paid in settlement of any loss, claim, damage, liability or action if such settlement is effected without the consent of the Indemnitor, which consent shall not be unreasonably withheld or delayed. Failure to deliver written notice to the Indemnitor within a reasonable time after the commencement of any such action, if prejudicial to its ability to defend such action, *shall relieve the Indemnitor of any liability to the Indemnitee under this Section.* At the Indemnitor's request, the Indemnitee under this Section, and its employees and agents, shall fully cooperate with the Indemnitor and its legal representatives in the investigation of any action, claim or liability covered by this indemnification and provide full information with respect thereto.

10.4    **NOTWITHSTANDING ANYTHING TO CONTRARY CONTAINED HEREIN, NEITHER PARTY SHALL UNDER ANY CIRCUMSTANCES BE LIABLE FOR ANY CLAIMS FOR ANY INCIDENTAL, CONSEQUENTIAL, INDIRECT OR SPECIAL DAMAGES, INCLUDING ANY LOST PROFITS OR SAVINGS, ARISING FROM ANY BREACH OF WARRANTY OR THE PERFORMANCE OR BREACH OF ANY PROVISION OF THIS AGREEMENT OR THE USE OF ANY PURCHASED ANDA ASSET, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.**

ARTICLE 11

CLOSING

11.1    Seller shall deliver actual and exclusive possession of the Real Property to Purchaser and convey to Purchaser good and marketable title to the Real Property, free and clear of all mortgages, liens, claims, riparian rights, encroachments, encumbrances, tenancies, occupancies, covenants, restrictions, easements, rights or conditional rights-of-way, approved and insured as such by a title company selected by Purchaser and authorized to do business in the State of New Jersey at regular rates and without exceptions.

11.2    Seller shall convey title to the above described Real Property together with all rights-of-way or use, servitudes, easements, tenements, here determents and appurtenances benefiting or belonging to or appurtenant to any of the foregoing strips and gores adjacent, adjoining, abutting or relating to the aforesaid property, the revisions and remainders, and the rents, issues and profits thereof, together with all right, title and interest if any, of the Seller in and to any land lying in the bed of any street, road or avenue, opened or proposed, in front or of adjoining said Real Property, and all right, title interest of Seller in and to any award made in lieu thereof, and in any to any unpaid award for damage to said Real Property by reason of change or grade or any street or any condemnations for any reason.

11.3    Seller will execute and deliver to the Purchaser on closing of title or thereafter, on demand, all proper instruments for the conveyance of such title and the Assignment and collection of any such award.

7

11.4  If at the time of the closing, the Real Property, or any part thereof, shall be or shall have been affected by an assessment or assessments which is or may become payable in annual installments, of which the first installment is then a charge of lien, or has been unpaid, then for the purposes of this Agreement all of the unpaid installments of any such assessment, including those which is to become due and payable and to be liens upon the Real Property affected thereby and shall be paid and discharged by the Seller upon the delivery of the Deed.

11.5  The following is to be apportioned as of midnight of the day immediately prior to the closing:

      A. Taxes and sewer rents in connection with the Property, if any, on the basis of the fiscal year for which assessed;

      B. Water charges, if any, in connection with the Property on the basis of the fiscal year;

      C. Other costs, charges and expenses usually involved and adjusted with regard to similar type property;

      D. To the extent that the Adjustments in this Article are not based on final figures at closing, the applicable provisions of this article shall survive closing of title.

11.6  If the closing shall occur before the tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the next preceding year applied to the latest assessed valuation.

11.7  The Deed shall be the usual Bargain and Sale with Covenants against Grantors' Acts, in proper statutory form, and shall be duly executed and acknowledged so as to convey to the Purchaser the fee simple of the Real Property free of all encumbrances, tenancies, (except as otherwise provided by this Agreement) and occupancies (including but not limited to mortgages and other security interests) and free of any matter or state of fact which would render title unmarketable or inconsistent with Paragraphs 3.1 and 3.2 of this Article Three and shall contain any covenant required by applicable law of this Agreement.

11.8  The Seller shall pay for the drawing of the Deed and the New Jersey Realty Transfer Fee, but all searches, recording fees and title insurance and other expenses are to be paid for by the Purchaser. Any and all roll back taxes which may be assessed against this property shall be the responsibility of the Seller.

11.9  Seller shall furnish to Purchaser at time of closing an Affidavit of Title in the usual form and attesting to the absence, unless otherwise provided for herein, of any financing statements or claims of lien or potential liners known to Seller and further attesting that (i) there have been no improvements to the Real Property within the past four (4) months immediately preceding the date of closing; (ii) that no tax appeals have

8

been taken with respect to the Real Property within the past three (3) years. If the Real Property have been improved within said time, Seller shall deliver releases or waivers of all mechanic's liens executed by general contractors, subcontractors, suppliers, laborers and material men in addition to Seller's lien affidavit setting forth the names of all such general contractors, subcontractors, suppliers, laborers and material men and further reciting that in fact all bills for work to the Real Property and material furnished which could serve as a basis for a mechanic's lien have been paid or will be paid at closing. Seller represents that this transaction is not (or is) subject to the Foreign Investment In Real Property Tax Act of 1980 ("FIRPTA"). Seller shall also include in the Affidavit that there is no underground oil tanks, or if any exist, there has been no spillage or leakage for any such tank(s), and Seller has complied with any applicable law as to the testing of any such tank(s), including N.J.S.A. 58:10A-21 et. seq.

11.10  If Purchaser are corporations, they will deliver to the other party at the closing a resolution of majority of the Board of Directors authorizing the sale or purchase, as the case may be, and delivery of the Deed and a certificate by the Secretary of Assistant Secretary of the corporation certifying such resolution.

11.11  If at the date of closing there may be any other liens or encumbrances on the Property which the Seller is obligated to pay and discharge, the Purchaser may use any portion of the cash balance of the Purchase Price to satisfy same, provided the Seller shall simultaneously either deliver to the Purchaser at the closing, instruments in recordable form and sufficient to satisfy such liens and encumbrances or record together with the cost of recording or filing said instruments or, provided that the Seller has made arrangements with the title company employed by the Purchaser in advance of closing, to deposit with said company sufficient monies acceptable to and required by it to insure obtaining and the recording of such satisfaction and the issuance of title insurance to the Purchaser either free or any such liens and encumbrances, or with insurance against enforcement of same out of the insured property.

11.12  If a search of the title discloses judgments, bankruptcies or other returns against other persons having names the same as or similar to that of the Seller, the Seller with on request deliver to the Purchaser an affidavit in form acceptable to Purchaser's title insurance company showing that such judgments, bankruptcies or other returns is not against the Seller provided Purchaser's title insurance company showing that such judgments, bankruptcies or other returns is not against the Seller provided Purchaser's title insurance company will insure over same at normal rates within the time set for closing.

11.13  If any of the foregoing items cannot be apportioned and adjusted at the closing of title because they/it is not fully ascertainable or if the tax rates applied carries a retroactive assessment or adjustment, they shall be apportioned and adjusted at the closing to the extent reasonably possible, and the final adjustment shall be made as soon thereafter as the undetermined amount(s) is/are ascertainable. The provisions of this Paragraph 4.13 shall survive the delivery of the Deed.

9

11.14  Closing of title shall take place at least two weeks subsequent to the Bankruptcy Court's approval of this sale but within three weeks of the Court's approval of this sale. Purchaser and/or Seller will be permitted to conduct all title and deed requirements during this time period. Closing shall occur at the office of Barry Frost, Esq., Teich Groh, 691 State Highway, 33 Trenton, New Jersey 08619

## ARTICLE 12

COVENANTS AND REPRESENTATIONS OF SELLER

12.1  Seller warrants and represents: Except for public utility liens, pipes, wires, conduits and the like which may pass through, over or under adjacent Real Property in order to reach the Real Property, Seller covenants (i) that there are no lines, pipes, wires, conduits, easements or restrictions which would affect Purchaser's right to use the Real Property; (ii) the continued maintenance and operation of the Real Property is not now and will not be on the date of closing dependent on any other property; (iii) no building or other improvement not part of the Real Property now relies, or on the date of closing will rely on any other property or any part thereof or any interest therein to fulfill any municipal or governmental requirement; and (iv) none of the improvements on the Real Property rely on any other property to fulfill any governmental or municipal requirement. In the event that any of the conditions set forth in this Paragraph are not satisfied or satisfactory to Purchaser, Purchaser shall have the right to void this Agreement and secure the return of all Deposit Monies or compel Seller to comply with the aforesaid conditions.

12.2  There are no outstanding assessments affecting the Real Property.

12.3  In the event of the institution, prior to closing, of any proceedings, judicial, administrative or otherwise, which shall relate to the proposed taking of any portion of the Real Property by eminent domain, or in the event of the taking of any portion of the Real Property by eminent domain prior to closing, Purchaser shall have the right and option to terminate this Agreement by giving the Seller written notice of such effect at any time after their receipt of written notification of any such occurrence or occurrences or equitable abate the Purchase Price. Seller hereby agrees to furnish Purchaser with written notification in respect thereof within forty-eight (48) hours from the Seller's receipt of any such notification. After receipt of such notification, Purchaser shall have the right to fully participate in any such condemnation proceeding. Should Purchaser so terminate this Contract, the deposit monies shall immediately be returned to Purchaser and thereupon the parties hereto shall be released from their respective obligations and liabilities hereunder. If Purchaser does not elect to void this Agreement, and award arising out of a taking of the Real Property or any part thereof shall be the property Purchaser.

12.4  Seller has no knowledge of any pending or threatened condemnation or eminent domain proceedings which would affect the Real Property.

10

12.5    Seller agrees not to withdraw, settle or otherwise compromise any pending tax reduction proceeding on the Real Property without the consent of Purchaser. If any proceeding shall result in any reduction of assessment for the tax year in which the closing occurs, it is agreed that the amount of tax savings or refund for such year, less the fees and disbursements of Seller's attorneys in connection with such proceeding, shall be apportioned between the parties as of the date real estate taxes are apportioned under this agreement.

12.6    All documents or instruments initialed by or on behalf of the parties to the Agreement are incorporated in this Agreement by reference, or referred to herein, and any and all leases, service contracts, insurance policies, the original or a certified copy of the certificate of occupancy and all other documents affecting the Real Property shall be delivered to Purchaser or their assigns at closing; and prior thereto, the same may be inspected at all reasonable times at the office of the attorneys for the Seller. Purchaser, or their assigns, or their attorneys, may make copies thereof and shall be supplied with copies thereof by Seller of Seller's attorney.

12.7    If any instrument or deposit is necessary in order to obviate a defect in or objection to title, if Seller is obligated to close, the following shall apply: (a) any instrument shall be in such form and shall contain such terms and conditions as may be reasonable required by the title insurance company employed by the Purchaser to examine and insure title and to satisfy said company for them to omit any defect, objection or exception to title; (b) any such deposit shall be made with the said title company; and (c) Seller agrees to execute, acknowledge and deliver any such instrument and to make any such deposit.

12.8    Any and all actions required of Seller as provided by this Agreement shall be done in a commercially reasonable and timely manner.

12.9    In the event a Certificate of Occupancy and/or Smoke Detector Certification is required in connection with the sale of the Property, Seller shall provide same five (5) days prior to closing of title.

ARTICLE 13

NOTICES

13.1    Except as otherwise provided in Article Three, all notices given or required to be sent by the parties hereto shall be deemed to be duly given only if sent by registered or certified mail and addressed as follows:

　　　　IF TO Purchaser:

　　　　John Wiley, Jr., Esq.
　　　　343 Main Street
　　　　Metuchen, New Jersey 08840

11

IF TO Seller:

Barry W. Frost, Esq.
Teach Groh
691 State Highway 33
Trenton, New Jersey 08619

## ARTICLE 14

## DEFAULT

14.1   In the event of a default by either party, there shall be the right to either (a) void this Agreement; or (b) suing for Specific Performance; or (c) the right of suit for any direct damages but not for consequential damages.

## ARTICLE 15

## BROKER

15.1 The parties represent that no broker, realty or otherwise has been involved in this transaction and the parties will indemnified each other in the event of any claim for compensation by another party.

## ARTICLE 16

## NON-RECORDATION OF AGREEMENT

16.1   The parties hereto agree that this Agreement shall not be lodged or recorded or filed in any public office and that nothing herein contained shall operate or bind or cloud the title to the said Property.  Failure to comply with this provision shall be a breach of this Agreement and shall render same null and void.  The Seller thereupon is entitled to retain all Deposit Monies as liquidated damages.

## ARTICLE 17

## ENTIRE AGREEMENT

17.1   This writing contains the entire agreement between the parties hereto and no agent, representative, salesman or officer of the parties hereto is authorized to make or has made any statement, agreement, representation, either oral or written, in connection with and/or modifying, adding or changing the terms and conditions set forth herein.  No custom or dealing between the parties shall be permitted to contradict, vary, and/or modify terms hereof.  Seller is not responsible or liable for any condition or stipulation not specifically set forth herein relating to or affecting the Property.

ARTICLE 18

MODIFICATION OF AGREEMENT; SEPARABILITY OF AGREEMENT; CHANGES

18.1    No modification(s) of this Agreement shall be binding unless such modification(s) shall be in writing and signed by the parties hereto. Should any Court of competent jurisdiction deem any term, condition, or provision herein to be unenforceable, that determination shall have no effect upon the binding force and effect of the balance of this agreement.

ARTICLE 19

ORAL MODIFICATIONS

19.1    This Agreement may be amended, modified or superseded only by a writing executed by both parties.

ARTICLE 20

APPLICABLE LAW

20.1    This Agreement shall be governed by and construed in accordance with the laws of the laws of the State of New Jersey.

ARTICLE 21

BINDING EFFECT

21.1    This Agreement is to be binding upon the parties, their heirs, executors, administrators, successors and to the extent permitted herein, their assigns. Use of one gender in the Agreement includes all other genders; use of plural includes singular, plural, all as may be appropriate. The parties agree that there have been no statements, warranties, representations, oral or otherwise, or any condition of the sale, other than as is contained in this writing. Captions shall not be deemed as within the scope of a paragraph nor representative nor descriptive of any paragraph or provision therein.

ARTICLE 22

MISCELLANEOUS

22.1    The Seller shall provide to the Purchaser a copy of the present Deed and Title Policy as well as copies of any plans, environmental and/or engineering studies for the subject Real Property along with a recent boundary line survey, at no cost to the Purchaser, within thirty days of a fully executed contract by all parties.

13

14

ARTICLE 23

23.1 The Purchaser's and Seller's accountants will mutually agree to the allocation of purchase price prior to closing.

ARTICLE 24

**24.01.** Purchaser and Seller agree that the Property sold by Seller to Purchaser and Seller's obligations hereunder in all respects shall be and are in an "as is" condition. Purchaser has entered into this Agreement with knowledge as to the value, character, quality and condition of the Property. Except as expressly provided in this Agreement, and only to the extent hereof, Seller has made no representation with respect to the condition of the Property and has assumed no liability or responsibility with respect to or on account of any condition which may exist.

ARTICLE 25

ASSIGNMENT

25.01 Purchaser shall have the right to assign the contract to a wholly owned subsidiary.

**IN WITNESS HEREOF**, the parties hereto have executed this Agreement the day and year of the first above written.

WINMEDIX, INC.

_____  on behalf 6/25/11
Authorized Signatory
Dr. Ravinder R. Annamraju

ADVENT PHARMACEUTICALS, INC

_____
BHARAT K. PATEL, President

6/25/2011

15