| UNITED STATES BANKRUPTCY COURT |
|---|
| DISTRICT OF NEW JERSEY |
| Caption in Compliance with D.N.J. LBR 9004-2(c) |
| |
| Larry K. Lesnik |
| **NORRIS McLAUGHLIN & MARCUS, P.A.** |
| Attorneys for P&L Development of New York |
| and PLD Acquisitions, LLC |
| 721 Route 202/206, Suite 200 |
| P.O. Box 5933 |
| Bridgewater, NJ 08807-5933 |
| (908) 722-0700 |

In Re:

ADVENT PHARMACEUTICLS, INC.,

Debtor.

Chapter 11

Case No: 11-25437/KCF

Hearing Date October 3, 2011

# CERTIFICATION OF EVAN SINGER IN OPPOSITION TO DEBTOR'S MOTION TO SELL ASSETS PURSUANT TO 11 U.S.C. § 363

Evan Singer of full age, hereby certifies and say:

1. I am the Executive Vice-President of P&L Development of New York Corporation and PLD Acquisitions, LLC (collectively "PL") and have personal knowledge of the facts sets forth herein, unless otherwise indicated.

2. I make this certification in opposition to the above Debtor's motion to sell assets pursuant to 11 U.S.C. § 363, since the Debtor is attempting to sell assets as to which it has no legal or equitable interest.

3. As evidenced by the Confidentiality Agreement between PL and Advent Pharmaceuticals, Inc. ("Advent"), a copy of which is attached hereto as Exhibit "A", as early as September 12, 2008, PL expressed a potential interest in acquiring assets from Advent. Specifically, PL's interest was in acquiring ANDA 76-460.

Document    Page 2 of 16

4. After extensive efforts over a two year period, on November 23, 2010, PL entered into a letter of intent ("LOI") with Advent with respect to the purchase of the aforesaid ANDA, a copy of which is attached hereto as Exhibit "B". Such agreement required the parties thereto to use good faith efforts to execute a purchase agreement with respect to such asset by December 31, 2010. Notwithstanding the good faith on at least the part of PL, no purchase agreement was executed by such date, or at any time between PL and Advent.

5. In fact, it was only after the execution of the LOI that PL became aware of the fact that the ANDA was subject to the lien of UPS Capital Business Credit ("UPSCBC"), a secured creditor of Advent's, whose consent would thus necessarily be required before any transfer of such asset could take place.

6. Starting in January, 2011, with the knowledge, consent and in fact participation of Bharet Patel ("Patel"), Advent's principal, at least with respect to the initial conversation, PL commenced discussions with representatives of UPSCBC regarding an acquisition of the ANDA. At no time did we attempt to purchase the ANDA for a lower price than that which was set forth in the aforesaid LOI (notwithstanding the non-binding nature thereof).

7. As set forth in more detail in the opposition of UPSCBC to Advent's pending motion to sell, it is my understanding that such creditor took title to the ANDA by virtue of its exercise of its security interest therein pursuant to applicable provisions of the Uniform Commercial Code. Accordingly, on March 17, 2011, PL purchased the ANDA from such creditor for the aforesaid price of $650,000.00. A copy of the Bill of

Sale transferring title to the ANDA from UPSCBC to PL is attached hereto as Exhibit "C".

8. A "transfer statement" was then issued by secured creditor UPSCBC to PL with respect to the ANDA which PL thereafter delivered to the FDA on March 21, 2011 along with other information required to be provided thereto pursuant to the applicable federal regulations.

9. Thereafter, the FDA changed its records to reflect the transfer of the ownership interest of the ANDA to PL, although, upon information and belief, after receiving a letter dated July 1, 2011 from Advent, the FDA apparently "reversed" their records to this effect. Such records do not constitute an actual adjudication of the ownership of the ANDA but are more for informational purposes only.

10. As set forth in detail herein, as well as in the pleadings filed by UPSCBC in opposition to Advent's motion, the ANDA had been duly transferred from Advent to UPSCBC and thereafter to PL well before the May 18, 2011 chapter 11 filing by Advent, or the aforesaid July, 2011 "reversal" of the FDA as to the ownership thereof.

11. Accordingly, the ANDA is not presently property of Advent's estate and may not lawfully be sold thereby to any party, regardless of the price or terms being offered for same.

I hereby certify that the foregoing statements made by me are true. I am aware that if any such statements are willfully false I am subject to punishment.

Dated: September 23, 2011        By:  /s/ Evan Singer
                                      Evan Singer

N:\MSB\112626 PL Development-Evan Singer\Certification in Opposition.doc

# EXHIBIT A

## CONFIDENTIALITY AGREEMENT

THIS AGREEMENT is made and entered as of September 12, 2008, by and between **P&L DEVELOPMENT OF NEW YORK CORPORATION**, 200 Hicks Street, Westbury, NY 11590 USA ("**PL**"); and **ADVENT PHARMACEUTICALS INC.**, 10 Lake Drive, East Windsor, NJ 08520 USA ("**API**").

WHEREAS, PL and API each possess certain confidential and proprietary information (the "**Confidential Information**" as further defined below) that it is willing to disclose to the other party to facilitate working together regarding new business opportunities (the "**Program**") subject to the terms and conditions of the Agreement.

NOW, THEREFORE, the parties agree as follows:

**Section 1. Confidential Information/Excluded Information.**

1.1. <u>Confidential Information</u>. "**Confidential Information**" shall mean all non-public, proprietary or marked "confidential" information, including, without limitation, (i) that PL and API are working together on the Program and all information relating to the Program, (ii) pricing and other terms of the Program, customer information, user interface information, marketing and sales methods, software, programs, innovative laboratory methodology, concepts, materials, processes, procedures, formulations, discoveries, inventions, records, data, know-how, techniques, plans for product development, internal operations, product price lists, forecasts, manufacturing and design information, work results set forth in reports or correspondence between the parties, personnel records, financial information, and (iii) all written, graphic, observed, recorded and other materials relating to all or any part of the above. For purposes of this Agreement, the "**Receiving Party**" is the party which obtains, whether through verbal or written disclosure, or through observation, any Confidential Information of the other party (the "**Disclosing Party**"). Notwithstanding anything to the contrary set forth above, the fact that PL and API are working together on the Program shall cease being Confidential Information as of the second anniversary of the date hereof.

1.2. <u>Excluded Information</u>. Confidential Information shall not include any information which (a) is generally known to the public other than as a result of the Receiving Party's breach of this Agreement; (b) is in the Receiving Party's possession at the time of disclosure by the Disclosing Party, and was not acquired, directly or indirectly, from the Disclosing Party; (c) is disclosed to the Receiving Party on a non-confidential basis by a third party having the right to make such disclosure; (d) is independently developed by the Receiving Party without the use of the Confidential Information provided by the Disclosing Party; (e) is required to be publicly disclosed by law or court

order; (f) which Disclosing Party agrees in writing prior to disclosure that Receiving Party may disclose.

### Section 2. Confidentiality

2.1. <u>No Disclosure.</u> At all times after the date of this Agreement, the Receiving Party shall treat the Confidential Information of the Disclosing Party as confidential and proprietary, and as valuable business and property rights of the Disclosing Party. The Receiving Party shall not disclose or permit to be disclosed any Confidential Information of the Disclosing Party to any third party without the prior written consent or authorization of the Disclosing Party. In addition, the Receiving Party agrees not to use the Confidential Information of the Disclosing Party except in connection with the services that the parties are providing to each other. The Receiving Party shall take prudent business measures and precautions to safeguard this Confidential Information and to prevent the unauthorized use or disclosure thereof.

2.2. <u>Disclosure to Third Parties.</u> The Receiving Party may disclose the Confidential Information of the Disclosing Party to those directors, officers, employees and outside consultants (collectively, "**Access Persons**") who have a need to know such information provided that the Receiving Party shall advise each and every Access Person of the confidential, secret and proprietary nature of the Confidential Information; and shall require each Access Person to agree to the terms and conditions of this Agreement. However, this section 2.2 shall not diminish or limit the Receiving Party's liability for breach of this Agreement in the event that an Access Person discloses any Confidential Information to a third party without the express written consent of the Disclosing Party.

2.3. <u>Authorized Disclosure.</u> Each Party may disclose the Confidential Information of the other party to the extent such disclosure is required by law or court order provided that the Receiving Party will give reasonable advance notice (except where impracticable) to the Disclosing Party of such disclosure requirement and will use reasonable efforts to secure confidential treatment of such Confidential Information required to be disclosed.

### Section 3. Return of Confidential Information

Upon request, the Receiving Party shall promptly return (or destroy, if so requested) all Confidential Information (and copies thereof) belonging to the Disclosing Party. The Receiving Party, however, may retain a copy of Disclosing Party's Confidential Information for archival purposes subject to the terms of this Agreement.

### Section 4. Ownership; No Licenses

All Confidential Information is and shall remain the property of the Disclosing Party. Neither this Agreement nor any disclosure hereunder shall be deemed, by implication, estoppel or otherwise, to vest in the Receiving Party any license or other ownership rights to or under any inventions, patents, know-how, trade secrets, trademarks, or copyrights owned or controlled by the Disclosing Party.

### Section 5. Irreparable Harm

Receiving Party acknowledges and agrees that due to the unique nature of the Confidential Information, breach of the limitations, restrictions, and conditions relating to the disclosure and use of the Confidential Information will cause immediate and irreparable harm to the Disclosing Party, for which monetary damages provide an inadequate remedy. Therefore, the Receiving Party agrees that, in addition to all other rights provided by law to which the Disclosing Party shall be entitled, the Disclosing Party shall have the right to seek specific performance; temporary, preliminary and/or permanent injunctive relief, without the necessity of proving actual damages or posting a bond; and such other or additional equitable relief as a remedy for any violation or prospective violation of this Agreement.

### Section 6. General

6.1. <u>Severability</u>. In the event that a court of competent jurisdiction determines that any term or provision of this Agreement is unenforceable or invalid, then the remaining terms and provisions of this Agreement shall not be affected thereby, but shall remain in full force and effect, and such invalid or unenforceable term or provision shall be enforced to the maximum extent permissible by law. The parties agree to negotiate in good faith in order to provide a reasonably acceptable alternative to the term or provision held invalid or unenforceable.

6.2. <u>No Assignment</u>. Neither party may assign any right nor obligation under this Agreement without the prior written consent of the other party and any such assignment without consent shall be void.

6.3. <u>Survival</u>. Except to the limited extent a piece or portion of information ceases to fall within the definition of Confidential Information set forth in Section 1 above, this Agreement shall continue in full force and effect at all times during the term provided herein, and may be incorporated into any subsequent Agreement between the parties.

6.4. <u>Disclaimer</u>. Neither party has made or makes any representation or warranty regarding the accuracy or completeness of the Confidential Information. The parties agree that neither party shall have any liability to the other party resulting from, or arising, directly or indirectly, from a party's use of the Confidential Information, except as may be expressly set forth in a definitive agreement between the parties. Unless and until a definitive agreement with respect to any Program has been executed and delivered, neither party will be under any legal obligation of any kind whatsoever with respect to such a transaction by virtue of this Agreement or any written or oral expression with respect to such a transaction by any of its directors, officers, employees, agents or any other representatives or its advisors or representatives thereof. For purposes of this paragraph the term **"definitive agreement"** does not include an executed letter of intent or any other preliminary written agreement, nor does it include any written or verbal acceptance or an offer or bid. Each party shall be free to conduct the process of negotiating a possible transaction relating to a Program or any other subject for itself as it, in its sole discretion, shall determine, including without limitation, to negotiate with one or more individuals or entities simultaneously, on the same or different terms, without prior notice to the other party or any other person and to terminate discussions at any time without prior notice.

6.5   <u>Term; Entire Agreement; Governing Law; Attorneys Fees</u>. The obligations under this Agreement shall expire five (5) years from the date first above written. This Agreement constitutes the entire Agreement, and supersedes all other agreements or understandings, between the parties hereto relating to the subject matter hereof. No amendment of any provision of this Agreement shall be valid unless in writing and signed by each of the parties hereto. This Agreement may not be modified or amended, nor any term waived, except by a writing signed by both parties. The waiver by either party of any breach of this Agreement shall not be construed as a waiver of any subsequent breach. This Agreement shall be construed in accordance with the laws of the state of New York. The parties to this Agreement will bear their own respective costs and expenses (including attorneys' fees and legal expenses) incurred in connection with this Agreement.

| P&L Development of New York Corporation | Advent Pharmaceuticals Inc. |
|---|---|
| By: _John Phan_ (signature) | By: _BKPatel_ (signature) |
| Print: John J. Francis | Print: BHARAT K PATEL |
| Title: Sr-VP, Sales & Bus. Dev. | Title: President<br>9/29/05 |

- 4 -

# EXHIBIT B

**P & L Development of New York Corporation**
**200 Hicks Street**
**Westbury, New York 11590**

November 23, 2010

Advent Pharmaceuticals Inc.
10 Lake Drive
East Windsor, New Jersey 08520

Re:   **Purchase of Ibuprofen 200mg ANDA (the "Property")**

Gentlemen:

This letter of intent ("LOI") contains the proposal of P&L Development of New York Corporation, or nominee, ("**Buyer**") to purchase the Property from Advent Pharmaceuticals Inc., or nominee ("**Seller**"). It is understood that this LOI and the terms outlined herein will be the basis for the preparation of a purchase agreement for the Property (the "**Purchase Agreement**"), provided, however, the parties acknowledge and agree that not all of the material terms and conditions of the Purchase Agreement are contained herein. The parties shall use good faith efforts to execute the Purchase Agreement by December 31, 2010, after the full execution hereof by both parties (the "**Negotiation Period**").

The basic terms and conditions of the proposal are:

| | |
|---|---|
| **Property:** | Ibuprofen 200mg ANDA. |
| **Purchase Price:** | Six Hundred Fifty Thousand Dollars ($650,000.00) (the "**Purchase Price**"). |
| **Payment of Purchase Price:** | The purchase price will be paid in full on the Closing Date. |
| **Other:** | During the technical transfer of Property from Seller's manufacturing facility to Buyer's manufacturing facility, Buyer will use reasonable efforts to separate the Rx dosage strengths (400mg, 600mg, 800mg) from the OTC strength (200mg). Buyer will not guarantee |

Advent Pharmaceuticals Inc.
November 23, 2010
Page 2

                                          that FDA will agree to this action, and if so, Buyer will have no further obligation to Seller and Buyer will retain all technical data associated with the Property. In no event shall Buyer be responsible for any costs, studies, submissions, etc. associated with Seller's ongoing Rx submissions.

**Closing Date:**      Closing shall occur on a date set by Buyer, but no later than ~~thirty (30)~~ days after all contingencies and option periods have been eliminated or waived in writing by Buyer.

[handwritten: fifteen (15) days. Buyer on or before 15th December 2010]

**Condition of Title:**      Title to the Property free and clear of all liens, claims, etc. will be conveyed to Buyer under the Purchase Agreement on the Closing Date by Bill of Sale, subject only to matters affecting the condition of title created by or with the written consent of Buyer.

**Brokers and Consultants:**      Seller and Buyer acknowledge that no broker is involved in this transaction. Both parties agree to indemnify each other and hold each other harmless from any claims of any brokers, agents or consultants arising from the purchase of the Property.

**Notices/Documents:**      Seller shall promptly provide to Buyer any and all documents affecting the Property (the "**Due Diligence Materials**").

**Right of Entry:**      During the Negotiation Period, Buyer will have the right to examine any and all documents affecting the Property and other matters that Buyer may deem necessary at its discretion.

**No Shop:**      Following the mutual execution of this LOI and continuing until the earlier to occur of (i) the expiration of the Negotiation Period and (ii) the date

Advent Pharmaceuticals Inc.
November 23, 2010
Page 3

|  |  |
|---|---|
|  | on which Buyer notifies Seller that it desires to withdraw from negotiations of a Purchase Agreement. Seller and its affiliates, officers, employees, directors, stockholders and representatives shall cease to solicit or entertain, offers, inquiries or proposals from, or to negotiate with, or participate in discussions with, or to disclose information to, persons, firms or entities other then Buyer in connection with the possible sale or other disposition of the Property. |
| **Confidentiality:** | The parties have heretofore executed a Confidentiality Agreement ("**CDA**"), a copy of which is attached hereto as **Exhibit A**. The CDA shall remain in full force and effect in accordance with its terms. |
| **Non-Binding:** | Notwithstanding anything contained herein, it is agreed that neither party is under binding obligation to the other except as otherwise specifically recited above with regard to Confidentiality and No Shop until a Purchase Agreement acceptable to both parties has been fully executed. |
| **Counterparts:** | This LOI may be executed in any number of counterparts, and any of the parties may execute this LOI by signing separate counterpart signature pages. If this LOI is executed in counterpart, all of the counterparts, taken together, shall constitute one and the same contract. Signatures transmitted by telecopy or as emailed PDF copies shall be binding as originals, and each party hereby waives any defenses to the enforcement of the terms of this LOI based upon the form of signature. If telecopied signatures or emailed PDF copies are used to exchange signed documents, each party will forward the "ink original" signature pages to the other party promptly upon |

Advent Pharmaceuticals Inc.
November 23, 2010
Page 4

request after delivery of the telecopied signatures or PDF copies, as set forth herein.

Very truly yours,

P&L Development of New York Corporation

By: _____
Mitchell Singer, President

**AGREED AND ACCEPTED:**

Advent Pharmaceuticals Inc.

By: _____
Bharat Patel, President

Date: 11/24/2010

# EXHIBIT C

## Bill of Sale

For good and valuable consideration, UPS Capital Business Credit ("**Secured Party**"), as secured party, hereby sells, conveys, transfers, and assigns to PLD Acquisitions, LLC ("**Purchaser**"), its successors and assigns, forever to its and their own use, all rights, title and interests of Advent Pharmaceuticals, Inc., and of Secured Party, if any in and to certain assets as more specifically described in Schedule A attached hereto (the "**Transferred Assets**"), free and clear of the security interests, liens, and encumbrances of Secured Party.

Purchaser accepts such rights, title and interests therein on an "**as is,**" and "**where is**" basis without representations or warranties of any kind, express or implied, including, without limitation, any warranties as to existence or condition of any Transferred Asset, title, possession, quiet enjoyment or the like, merchantability, value, useful life, fitness for intended use, or similar representations and warranties other than as set forth in the Agreement for Private Sale by and between the Secured party and the Purchaser dated as of February 17, 2011. Without limitation, the warranties set forth in N.J.S.A. 12A:9-610(d) are specifically disclaimed.

This Bill of Sale shall be governed by and construed in accordance with the laws of the State of New Jersey, without regard to conflicts of law rules.

IN WITNESS WHEREOF, Secured Party has executed this Bill of Sale as of MARCH 17, 2011.

UPS Capital Business Credit

By: *[signature]*
Name: Brian P. Rice
Title: Special Assets Manager

Accepted this 17th day of March, 2011

PURCHASER:
PLD Acquisitions, LLC
By: P & L Development of New York Corporation
Its: Manager
By: *[signature]*
Name: Mitchell Singer
Title: President & CEO

## Schedule A to Bill of Sale

| ANDA # | DESCRIPTION |
|---|---|
| 076460 | Ibuprofen Tablets, USP 200 mg |
|  | Ibuprofen Caplets, USP 200 mg |
|  |  |
|  |  |

40336540;3}    {40339237;1}2