UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ROBERTA A. DeANGELIS
UNITED STATES TRUSTEE, REGION 3
Jeffrey M. Sponder, Esq. (JS 5127)
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| Advent Pharmaceuticals, Inc., | : | Case No. 11-25437 (KCF) |
| Debtor. | : | Hearing Date: July 26, 2011 at 11:00 a.m. |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S
MOTION TO SELL ASSETS FREE AND CLEAR OF INTERESTS
PURSUANT TO 11 U.S.C. § 363**

The United States Trustee ("U.S. Trustee"), by and through her counsel, and in furtherance of her duties pursuant to 28 U.S.C. §§ 586(a)(3) and (5), respectfully submits this objection (the "Objection") to the above-captioned debtor's Motion to Sell Assets Free and Clear of Interests Pursuant to 11 U.S.C. § 363 (the "Motion"), and respectfully states as follows:

1. Pursuant to 11 U.S.C. §586, the U.S. Trustee is obligated to oversee the administration of Chapter 11 cases. Under 11 U.S.C. §307, the U.S. Trustee has standing to be heard on any issue in any case or proceeding under the Bankruptcy Code. Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.)*, 33 F.2d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. §307 which goes beyond mere pecuniary interest);

*Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the United States Trustee as a "watchdog").

## Background

### A. The Bankruptcy Filing

2. On May 18, 2011 (the "Petition Date"), Advent Pharmaceuticals, Inc. (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of title 11, United States Code (the "Bankruptcy Code"), and has remained in possession of its property and management of its affairs.

3. An Unsecured Creditors' Committee has not been appointed by the United States Trustee.

4. On June 1, 2011, the Debtor filed its schedules and statement of financial affairs. *See* Docket Entry 9. Pursuant to the schedules, the Debtor owns real property consisting of a building and land located at 55 Lake Drive, East Windsor, New Jersey (the "Real Property"). The Debtor lists the current value of the Real Property at $2.4 million. In addition to the Real Property, the Debtor owns personal property consisting of investments in Theragen, Inc. (a debtor in case no. 11-25440) in the amount of $3.2 million, certain FDA approvals in the amount of $1.2 million, and office equipment, machinery and inventory in the amount of $3,425,188.00, which totals $7,825,188.00 (the "Personal Property" and together with the Real Property, the "Property"). The schedules set forth that UPS Capital Business Credit ("UPS") is the Debtor's only secured creditor in the amount of $747,465.24. The schedules set forth that the Debtor has $833,755.63 of priority claims consisting of payroll, the Internal Revenue Service and the State of New Jersey. Further, the Debtor has $2,687,860.13 of unsecured debt consisting of trade debt and loans.

    **B.**    **The UPS Motion to Dismiss**

    5.    On June 2, 2011, UPS Capital Business Credit ("UPS") filed a motion seeking to dismiss this case, or in the alternative, relief from the automatic stay (the "UPS Motion to Dismiss"). *See* Docket Entry 10. UPS argues, amongst other things, that the Debtor continues to incur substantial and continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation. The Debtor has acknowledged that it was not operating pre-petition and does not have the funds to operate post-petition. Without any new capital, there is no reasonable likelihood of rehabilitation.

    6.    On June 20, 2011, the Debtor filed opposition to the UPS Motion to Dismiss. *See* Docket Entry 24.

    **C.**    **The Sale Motion**

    7.    On September 12, 2011, the Debtor filed a Motion to Sell Assets Free and Clear of Interests Pursuant to 11 U.S.C. § 363 (the "Sale Motion"). Through the Sale Motion, the Debtor seeks to sell ANDA 40-576 to Bio Comp Pharma, Inc. ("Bio Comp"), which ANDA grants a license to produce a substance called Carisoprodol 350 mg, for $150,000.00. *See* Sale Motion, ¶ 3. In addition, the Debtor seeks to sell ANDA 76-460 to Bio Comp, which ANDA grants a license to produce a substance called Ibuprofen 200 mg, for $750,000.00.

    8.    The Sale Motion and the UPS Motion to Dismiss are scheduled to be heard on October 3, 2011.

    9.    For the reasons set forth below, the Debtor has failed to establish that the sale of the ANDAs is in good faith and for value as required under the Third Circuit's decision in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986).

**Objection**

10. Within the Third Circuit, sales of assets outside of the ordinary course of business pursuant to 11 U.S.C. § 363(b) are governed by *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986). The *Abbotts Dairies* decision provides that "when a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser." *See id*. at 149-50. The Motion, however, provides little to no information that would assist this Court in making an explicit finding of good faith.

11. The Third Circuit has stated that a "good faith" purchaser is "one who purchases in 'good faith' and for 'value.'" *See id*. at 147. A purchaser's good faith status can be destroyed if it is found to have been in collusion with the debtor or to have "attempt[ed] to take grossly unfair advantage of other bidders." *See id*. at 148. In *Abbott's Dairies*, the Third Circuit rejected the argument that a lack of good faith was not evident where the debtor and the purchaser had orchestrated the "emergency" justifying the need for an expedited sale. *See id*. The Third Circuit noted that the timing of the bankruptcy was manipulated "so that the bankruptcy court had no choice but to approve the Interim Agreement on August 10, the terms of which were designed to preclude any truly competitive bidding for the assets on September 12." *See id*.

12. Here, the Debtor has presented no appraisal or other evidence of the value of the ANDAs that Bio Comp will be purchasing. As the Third Circuit noted in *Abbott's Dairies*, "courts have held that '[f]air and valuable consideration is given in a bankruptcy sale when the purchaser pays 75% of the appraised value of the assets." *See Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d at 149. Clearly, some evidence of the value of the ANDAs must be provided before this Court can possibly approve the sale. The only "evidence" available is set forth in Schedule B, which provides that the ANDAs are worth at least $1.2 million. *See* Docket Entry 9.

13. Moreover, part of showing the necessity of a Section 363 transaction includes showing appropriate marketing of the assets, as part of the exercise of the debtor-in-possession's fiduciary duties to creditors. Marketing efforts must be designed to maximize the returns to the estate. *See In re WPRV-TV, Inc.,* 983 F.2d 336, 342 (1st Cir. 1983). Here, Mr. Patel represents that he solicited other offers including an offer from American Enterprises, but the offer made by Bio Comp was the highest and best offer. *See* Sale Motion Cert., ¶7. However, this statement does not satisfy the Debtor's burden to show the appropriate marketing of the ANDAs. In fact, the Patel Cert. fails to provide any other information concerning the marketing efforts taken by the Debtor including but not limited to how the ANDAs were marketed, how long the ANDAs were marketed, where the ANDAs were marketed or the procedures in place to determine the highest and best offer. As a result, the Debtor should be required to show what, if any, marketing efforts were undertaken to sell the ANDAs.

14. The Debtor has failed to establish that the sale is in good faith and for value. The Debtor did not provide any evidence concerning the value of the ADNAs other than the purchase price. In addition, the Debtor did not provide any evidence concerning the marketing of the ANDAs.

15. Further, the Debtor has not provided a business plan or any financials in order for the Court, the U.S. Trustee or any party-in-interest to evaluate the business. The Patel Cert. sets forth that the sale of the ADNAs would provide sufficient funds to help eliminate the debt to UPS and allow Theragen to reopen its business. *See* Patel Cert., ¶ 10. The Patel Cert. further provides that the sale of the ADNAs would place Theragen "in a position to begin paying back its debt to the Debtor so that Advent may begin repaying its unsecured creditors." *See id.* However, no evidence is produced by the Debtor to support these contentions.

For the reasons set forth above, the U.S. Trustee respectfully requests that the Court deny the Sale Motion, and grant such other and further relief as the Court deems just and proper.

        Respectfully submitted,

        ROBERTA A. DeANGELIS
        UNITED STATES TRUSTEE

        By:    /s/ Jeffrey M. Sponder
               Jeffrey M. Sponder
               Trial Attorney

Dated: September 26, 2011